**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**CAROL MURPHY GILMORE**                                                    **PLAINTIFF**

**V.**                                                             **NO. 1:20-cv-245-JMV**

**KILOLO KIJAKAZI,**[1]
**Commissioner of Social Security**                                          **DEFENDANT**

**FINAL JUDGMENT**

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of a May 11, 2020, final decision of the Commissioner of the Social Security Administration (the "Commissioner") finding that the Plaintiff was not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[2] For the following reasons, the Commissioner's decision is affirmed.

Statement of the Case

On May 11, 2018, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 29, 2017. The claim was denied initially on January 15, 2019, and upon reconsideration on June 24, 2019. Thereafter,

---

[1] The Clerk is directed to amend the style of the case to reflect the automatic substitution of Kilolo Kijakazi, Commissioner of Social Security, in the place of Andrew Saul.

[2] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

the claimant filed a written request for hearing received on July 10, 2019. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was conducted on April 29, 2020. Tr. at 61. Plaintiff appeared and testified with the assistance of counsel, and vocational expert ("VE") Celena Earl also appeared and testified. Tr. at 61-62, 324.

The ALJ issued a hearing decision on May 11, 2020, concluding that Plaintiff was not disabled for purposes of the Social Security Act through the date of the decision. Tr. at 19-29. Applying the sequential evaluation set forth in the Commissioner's regulations at 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity through the date of the decision. Tr. at 21. At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease. *Id.* at 21-22. The ALJ found that Plaintiff's other impairments of hearing loss, mitral valve prolapse, gastroesophageal reflux disease, thyroid nodules, depression, and anxiety were not severe impairments. *Id.* at 22-24. At step three, the ALJ found that Plaintiff's impairments did not meet a listed impairment. *Id.* at 24. The ALJ then assessed Plaintiff's residual functional capacity, finding that Plaintiff retained the ability to perform light work with the additional restrictions of no climbing ladders, ropes, or scaffolds; no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs; and no more than occasional overhead reaching with either arm. *Id.* at 24-28. At step four, the ALJ found that Plaintiff retained the ability to perform her past relevant work as a sales representative for building equipment and supplies and industrial machinery. *Id.* at 28-29. Accordingly, the ALJ found that Plaintiff was not disabled and denied her benefits application. *Id.* at 29.

The Plaintiff argues that there are three issues before this court: (1) "the ALJ erred in not securing a copy of the MRI of April 2018; (2) the ALJ mischaracterized the Plaintiff's ability to

do "robust activities"; and (3) the ALJ violated SSR 82-62 in finding that Plaintiff could return to the jobs as generally performed in the national economy but not as she performed them." *See generally* Pl. Br.

**I.    Issue 1: Did the ALJ erred in not securing a copy of the MRI of April, 2018?**

In the May 11, 2020, decision, the ALJ noted:

> On March 26, 2018, x-rays of the cervical spine revealed the following findings (Exhibit 3F/17): Mild degenerative changes mid to lower cervical spine. No acute compression fracture or subluxation through C7. No bony lytic or sclerotic lesions. Prevertebral soft tissues are normal. The impression was mild degenerative changes mid to lower cervical spine. (Tr 20)

He then commented: "[m]edical notes indicate that an MRI of the cervical spine in April 2018 demonstrated some scattered neuroforaminal stenosis and central canal stenosis throughout with C5-C6 and C6-C7 being the most symptomatic areas. The most symptomatic neuroforamen that was narrow appeared to be the right C6-C7 level." (Exhibit 9F/5). Tr. at 20.

The Plaintiff contends that the ALJ should have made this MRI part of the record and had a consultative examiner determine what Ms. Gilmore's limitations were in light of it. According to the Plaintiff, "[c]ertainly this was error, and it was reversible error since this MRI in its proper reading by a consultative examiner or possibly a medical expert could have revealed that she could not return to her past job as generally performed and therefore found disabled as of her alleged onset date of April 29, 2017. . . . In this failure to secure the MRI the Judge failed to develop the record and the resulting prejudice should be apparent." Pl. Br. at 7-8. The Plaintiff cites no legal authority for its argument.

In response the Commissioner points out that at the subject hearing, the ALJ asked Plaintiff's counsel "Is the record complete as far as you know?" and Plaintiff's counsel responded "Yes, Your honor, the record's complete." Tr. at 66. Further, the Commissioner argues that the

Plaintiff cannot show that the ALJ breached any duty to develop the record regarding this specific report because the primary responsibility for presenting evidence of disability belongs to the claimant, not the agency. *See* 20 C.F.R. § 404.1512(a)(1). And, the Commissioner asserts that while "the regulations state that the agency will make every reasonable effort to obtain a claimant's medical records, which means that we will make an initial request for evidence from your medical source . . . and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request . . ." 20 C.F.R. § 404.1512(b)(i)(1), the Plaintiff has offered no showing that the ALJ (or any other agency components) failed to make "every reasonable effort" to obtain her medical records. This is particularly so where neither Plaintiff nor her attorney identified or made a specific request concerning the report in question before the ALJ, and Plaintiff's attorney affirmatively stated at the hearing that they regarded the record as complete. Tr. at 66. Additionally, the record shows that Disability Determination Services reviewed the records that contained the summary of the MRI report. Tr. at 496-98. (Ex.9f).

Instead, Plaintiff apparently contends that the ALJ committed legal error regarding the April 2018 MRI report because "he did not request that [Plaintiff's] attorney secure it." Pl. Br. at 7. But there is no regulation or legal precedent that supports Plaintiff's position. The Fifth Circuit describes the agency's duty to develop the administrative record fully and fairly as requiring only that an ALJ reach "an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). This holding does not make the agency responsible for identifying and obtaining all possible evidence on behalf of a claimant, let alone making the agency responsible for informing a claimant's representative that there is some possible evidence that might be obtained. To the contrary, the administrative duty to develop the record is balanced against the fact

that claimants bear the burden of proving their disability and have the responsibility to present evidence in support of their disability claim. *See Holifield v. Astrue*, 402 F. App'x 24, 26 (5th Cir. 2010); 20 C.F.R. § 404.1512(a); *see also* 20 C.F.R. § 404.1740(b)(1) (representatives have an affirmative duty to obtain and forward the information a claimant wants to submit in support of their claim). The duty of inquiry does not include the duty to produce records or to advocate for the claimant, especially when, as is the case here, the claimant is represented by counsel and the ALJ can justifiably assume the claimant has presented her strongest case for benefits. *See Glenn v. Sec'y of HHS*, 884 F.2d 387, 391 (7th Cir. 1987).

In short, Plaintiff has offered no legal authority supporting her contention that the ALJ was obligated to obtain the April 2018 MRI report on her behalf, and thereby committed reversible legal error by failing to do so. While Plaintiff contends the ALJ should have independently obtained this record, ALJ had no reason to believe the record lacked any relevant evidence because Plaintiff's own attorney informed the ALJ that the record was complete to their satisfaction. Tr. at 66.

**II.     Issue 2: Did the ALJ commit legal error in allegedly mischaracterizing the Plaintiff's ability to do "robust activities"?**

According to the Plaintiff, the ALJ improperly disregarded an opinion that she was disabled that appeared in the records of Plaintiff's physician, Dr. Leonard Pratt. Specifically, the Plaintiff asserts that the ALJ erred in finding that Dr Pratt's opinion as to disability was inconsistent with the "robust physical activities" described in the claimant's own function report. In support thereof, Plaintiff's counsel cites miscellaneous entries in the subject function report and asserts that in his view, they do not meet the dictionary definition of robust activities. *See* Pl. Br. at 10.

For its part, the Commissioner points out, first, that the ALJ acknowledged that Dr. Pratt noted that from time to time at the end of physical examinations, 'remains disabled' or 'remains

totally disabled'" Tr. at 28, 520, 586, 598, 626, 638, these statements by Dr. Pratt addressed an administrative determination reserved to the Commissioner. Tr. at 28; 20 C.F.R. § 404.1520b(c)(3)(i). The court agrees that the regulations direct that such statements (1) are not medical opinions, (2) are neither valuable nor persuasive evidence, and (3) an ALJ is not required to provide any analysis of such statements in the hearing decision. *See* 20 C.F.R. § 404.1520b(c)(3)(i); *see also* 20 C.F.R. § 404.1513(a)(2) (revised definition of medical opinion). Further, the Commissioner accurately notes Plaintiff's argument does not identify or provide a record citation for any specific functional limitations articulated by Dr. Pratt, as opposed to general statements that she was disabled or otherwise unable to work. *See* Pl's Br. at 9-16.

Rather than identify specific medical opinion evidence, the Plaintiff takes issue with the ALJ's statement that the record reflected "robust physical activities." *See* Pl's Br. at 9. This description is a reference to the fourth stated reason why the ALJ declined to credit Dr. Pratt's characterization of Plaintiff as disabled. In particular, the ALJ convincingly explained:

> In her function report . . . the claimant describes a robust set of activities (Exhibit 9E). She goes to yoga classes, which were recommended by her doctor. She does errands, such as the bank drive through, and the post office drop box. The claimant takes care of her little dog. The claimant has no problems with her personal care, such as dressing, bathing, shaving, feeding herself, and using the toilet, except that she has difficulty with her hair and feet. The claimant prepares her own meals. She does laundry with the clothes already in the basket in front of the washer. She folds the clothes on top of the dryer. She puts the clothes singularly back in their rooms. She sweeps and dusts. The claimant gets out of the house daily if the weather permits. She drives a car. The claimant goes shopping in stores for odds and ends, and groceries. Her hobbies include watching television on a daily basis and watching the Today Show. The claimant has no problems with squatting, bending, reaching, walking, sitting, kneeling, talking, stair climbing, seeing, and using her hands. She wears a soft collar. The claimant finishes what she starts. She uses no assistive devices except for glasses and a soft collar (Exhibit 9E). In her function report, the claimant presented that she could lift as much as 20 pounds, which is consistent with

>the exertional level in the residual functional capacity in this decision for light work (Exhibit 9E/6).

Tr. at 26.

As for the second and third factors on which the ALJ relied with regard to Dr. Pratt's disability opinion, the ALJ found that the doctor failed to state the specific reasons for his disability conclusion. Indeed, Plaintiff's medical imaging reflected mild changes, and Dr. Pratt's own clinical findings consistently described a normal back despite tenderness with no limitations in back motion. Tr. at 28, 373, 378-379, 384-385, 392-393, 407, 519, 531-532, 579, 625-626, 631-632, 638-639, 644-645. As the Commissioner correctly notes, supportability and consistency with the record are the two most important factors in assessing medical opinion evidence, and neither of these factors favored Dr. Pratt's disability opinion. Tr. at 28; 20 C.F.R. § 404.1520c(b)(2).

In sum, without regard to Plaintiff disputing the ALJ's characterization of her reported activity level as "robust," the hearing decision reflects the ALJ's consideration of Plaintiff's February 2019 function report as one of several factors contradicting Dr. Pratt's characterization of Plaintiff as disabled or otherwise unable to work. Tr. at 28. As the ALJ noted, Plaintiff reported that she attends yoga classes, takes care of her own hygiene, lives alone during the week, cares for her dog, prepares her own food, walks without assistance, drives herself to shop, and can lift up to 20 pounds. Tr. at 26, 277-284. As such, the Commissioner is correct that the ALJ properly explained his finding that Dr. Pratt's claims of disability were not persuasive. Tr. at 26, 28. While the ALJ properly found that Dr. Pratt's statements were not medical opinions for purposes of the regulations, to the extent the ALJ was required to make a finding of fact regarding Dr. Pratt's statements, the finding is consistent with the regulatory requirements and supported by substantial evidence of record.

**III.     Issue 3: Did the ALJ err in finding that Plaintiff not disabled at step four based on her ability to perform her past relevant work as a sales representative?**

By way of background, at the April 2020 administrative hearing, the ALJ asked the VE to classify Plaintiff's past work, and she responded that there were two past jobs, as sales representative for building equipment and supplies, and as sales representative for industrial machinery. Tr. at 83-84. The VE testified that the jobs were classified in the Dictionary of Occupational Titles ("DOT") as light exertion jobs, but that Plaintiff had performed them at the heavy exertional level. Tr. at 83-84. Plaintiff's counsel at the administrative hearing did not dispute or challenge VE's classification of Plaintiff's past work. Tr. at 83-86; *see Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (failure to challenge vocational expert testimony results in unchallenged testimony that an ALJ may properly rely upon).

In response to the ALJ's hypothetical question, the VE testified that that the hypothetical individual could not perform Plaintiff's past jobs at the exertional level Plaintiff had performed them but could performed these jobs as they are generally performed in the national economy. Tr. at 84. In the hearing decision, the ALJ found that Plaintiff was not disabled because she was "able to perform the [past relevant] work as generally performed." Tr. at 29; 20 C.F.R. § 404.1560(b)(2) (claimant is not disabled if they "can meet the demands of . . . previous work, either as the claimant actually performed, or as generally performed in the national economy"). The ALJ's finding was supported by substantial evidence and consistent with agency policies and regulations.

While Plaintiff cites Social Security Ruling (SSR) 82-62 for the principle that the claimant should be the primary source for their actual job duties, the Commissioner correctly points out that Plaintiff's actual past job duties are not in dispute–the ALJ and VE both recognized that Plaintiff's residual functional capacity was not compatible with Plaintiff's actual job duties as a sales representative. Tr. at 29, 84; SSR 82-62, 1982 WL31386, at *3 (discussing "adequate

documentation of past work"). The relevant questions, as noted in SSR 82-61, are (1) whether the VE properly relied on the DOT as a source of job data for the duties of Plaintiff's past work as the jobs are generally performed in the national economy, and (2) whether the ALJ properly found that Plaintiff's residual functional capacity permitted this work. Tr. at 84;SSR 82-61, 1982 WL 31387, at *2 ("if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled'").Both of these questions are properly addressed in the hearing decision, and the ALJ's findings are supported by substantial evidence. Tr. at 29.

No error occurred because the agency has taken administrative notice of the job information in the DOT as a primary source of vocational evidence, and Plaintiff's residual functional capacity was consistent with her past relevant work as a sales representative as it is generally performed in the national economy. Tr. at 29, 84; 20 C.F.R. §404.1566(d)(1); SSR 00-4p, 2000 WL 1898704, at *2 ("we rely primarily on the DOT. . . for information about the requirements of work in the national economy").

In sum, the court finds the ALJ's finding was supported by substantial evidence and consistent with the Agency's cites and regulations. For the foregoing reasons, the Commissioner's decision is affirmed.

**SO ORDERED**, this the 2nd day of December, 2021.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**